Hall v. Edwards.

## ALPHEUS P. HALL ET AL.
### V.
## JACOB EDWARDS.

1. EVIDENCE.—The court is of opinion that the new evidence introduced to show that the instrument upon which the vendor's lien was based was without consideration, does not change the aspect of the case (93 Ill. 249), since it was taken thirteen years after the events testified about, and the witnesses were closely related to appellant and his grantor, and knew the evidence of the facts as presented in the former record before the Supreme Court, and were doubtless affected as to their recollection, by the statements and discussions of the family in the meantime.

2. REPUDIATION OF AGREEMENT.—The defense as to the parol agreement fails for the reason that an answer was in fact filed by defendant's recognized solicitors, and without notice to the contrary, complainant's

agent in the foreclosure case was authorized to regard it as the act of the defendant, and a repudiation of the agreement.

3. USURY.—The court is of opinion that there was no usury in taking the bonus in question, and the agreement for a larger rate of interest than originally received, since there was an additional risk assumed by the creditor in substituting for part of the security previously held, another tract of land, with the value and condition of which he was unacquainted.

APPEAL from the Circuit Court of Knox county; the Hon. JOHN J. GLENN, Judge, presiding. Opinion filed August 20, 1884.

Messrs. WILLOUGBY & DAUGHERTY, for appellants.

. Messrs. WILLIAMS & LAWRENCE, Mr. W. B. BRADFORD and Mr. GEORGE W. THOMPSON, for appellee; cited Edwards v. Hall, 93 Ill. 329–335.

PLEASANTS, P. J. On the 23d of December, 1870, appellant executed to Leander Douglass an instrument in writing as follows: " Whereas, Cyrus M. Hall purchased of L. Douglass S. W. 25, T. 9, N., R. 3 East, and N. W. 36, T. 9, N., R. 3 East, and I have purchased from said Hall said S. W. 25–9–3; and whereas, said Douglass has this day conveyed to said Hall said half section of land and taken a mortgage on said N. W. 36–9–3 and N. E. 31–9–4 E., to secure $4,407.97, in one year from ¦ Nov. 1, 1870, with 10 per cent. interest, said sum being due for the purchase of said first named ₐhalf section of land, now, in consideration of the premises, I agree that in case said purchase money is not made under said mortgage, said Douglass shall have a lien therefor upon said S W. 25–9–3 East, above described.

Dated Dec. 23, 1870.                                A. P. HALL."

On which was indorsed the following: "Having sold and conveyed to A. P. Hall the within described property, southwest 25–9–3, I agree to save him harmless from the within mentioned lien of said purchase money.

Dated Dec. 23, 1870.                                C. M. HALL."

Said Cyrus and appellant were sons of Chauncey Hall, who had taken a bond for a deed for the quarter section last above

mentioned from the former and assigned it to the latter. At this time Cyrus was owing on his purchase $3,000 with interest at six per cent. per annum from Nov. 1, 1865, and was being pressed for the money.   On the other hand, he had received from his father the price in full on his sale and was being pressed for the deed.   To meet both these demands he made the arrangement above recited.   The amount of the mort-gage note mentioned was made up of the principal sum then due and interest thereon computed at eight per cent., com-pounded, instead of six simple, as originally reserved, and the papers were dated back as of November 1st, to make the time five years, even.

In default of payment the mortgage was foreclosed by appellee, for whom Douglass had held the title to the land and to whom he had assigned the note and mortgage with the in-strument above copied; and the sale under the decree having failed to bring the full amount of the debt, this bill was filed to enforce the lien for the deficiency upon the S. W. 25–9–3, claimed under that instrument.

The defense originally set up was simply that this instru-ment was executed after the whole matter had been fully set-tled by the delivery of the note and mortgage and of the two deeds, and was therefore without consideration; which com-plainant denied, claiming that it was part and a material part of the same transaction.

It is conceded that the note, mortgage and deeds were signed on the same occasion, early in the evening of Dec. 23, 1870, at the residence of Cyrus M. Hall, in the town of Maquon and eighteen miles from the county seat; and that at the meeting for this purpose, besides Douglass and C. M. Hall, there were present, in and out, more or less, the lat-ter's wife, his son, his father, his hired man, the magistrate who took the acknowledgments and the attorney of appellant. All of these, excepting the hired man and the wife and son, were called to testify in the case, and while, as might have been expected after the lapse of seven years and from the different degrees of interest felt in them, they differed as to many circumstances not in themselves impressive or important, ex-

cepting Douglass they all agreed and were sufficiently posi_
tive that they heard nothing said about his retaining a lien
on the quarter section conveyed to appellant, and that the
agreement here in question was not among the papers then
signed.    Appellant testified that he was not present and knew
nothing of the terms of the settlement between Douglass and
his brother, except as he was afterward informed, but was
represented on that occasion by Wm. Humphrey, his attor-
ney; that he was himself at his father's house, some three
hundred yards distant; that after being notified that his deed
was made out he went over to his brother's where his attorney
picked it up from the table and handed it to him, and they re-
turned after a few minutes; and that his first conversation
with Douglass about his land was at his father's house, an
hour or so afterward, when the latter came in and said it
was all settled up *except* that he wanted an instrument in
writing to show that the title to the N. E. 31, of which he
claimed to have no knowledge, was clear, and induced appel-
lant to sign this paper upon the representation that it would
not hurt him if the land was free from incumbrance, that he
wanted it to show his client that he had acted in good faith,
and that it was not to go upon record; and that witness
signed it without reading it or hearing it read or knowing its
contents, except as Douglass represented them.    And in rela-
tion to this interview his father, his mother and his brother-
in-law testified to substantially the same effect.

Mr. Douglass' recollection of the circumstances not impor-
tant in themselves was also somewhat confused.    In some
particulars he was contradicted by several witnesses; as to
some he was unable to answer; he was not sure just when
and where the paper was signed; in some instances he co r
rected his own statements previously made, and was generally
more or less uncertain.    He was, however, very positive and
emphatic that he did not deliver the deed to Cyrus before it
was well understood that he was to retain his lien upon the
S. W. 25, conditionally, as expressed in the agreement; that
it was a part of the same transaction, and that he never made
the representations mentioned as to its object or effect.    It is

certain that on the morning of the 24th of December he took the mortgage, deeds and this agreement together to the county seat and filed them for record.

Upon the testimony of these witnesses, which with the several instruments referred to embraced all the evidence in the case, the circuit court dismissed the bill. But the Supreme Court on appeal reversed that decree for reasons confined to a comparison of the weight of the evidence, as set forth in the opinion reported in 93 Ill. 329, and remanded the cause for further proceedings in conformity therewith.

Thereupon appellant amended his answer, and so set up, by way of additional defenses, a parol agreement by the agent of complainant in the foreclosure case, in consideration of the agreement by Cyrus to interpose no defense, that he would bid off the mortgaged premises for the full amount of the debt, interest and costs; and also that the settlement between Douglass and Cyrus, as to the new rate of interest fixed thereby, was usurious. He also filed a cross-bill praying to have the agreement canceled as a cloud upon his title. Several of the witnesses were re-examined upon some points, and the following additional ones were called, viz.:

The hired man testified that he was in the room a part of the time when the parties were at C. M. Hall's to sign the papers; that A. P. Hall was not then present; that he came in afterward with his attorney, took his deed, and turned around and went out, without signing any paper or having any conversation about it, and that he had not been there before during that evening.

Mrs. C. M. Hall testified that appellant did not sit down while he was there, nor sign any paper; that she did not understand anything about the terms of this settlement in particular, and that she had refused to be sworn on the former hearing for reasons relating to the family.

A son of C. M. Hall, who was at that time about thirteen years of age, testified to the same effect, and further, that his father signed the agreement to indemnify appellant, indorsed on the paper in question, on the next morning, at his grandfather's house; that Douglass then told his father it was a

matter to show that he was acting in good faith for his client, and was not to be of record; that his grandmother went to a drawer and handed a deed to appellant, who handed it to Douglass, together, as witness thinks, with a dollar for recording it.

Mrs. Meeks, a sister of appellant, remembers that he went over to C. M. Hall's that evening with Humphrey to get the deed, and was not gone, as she should judge, over ten minutes; that he brought back a deed which he gave to his mother to put away; that Douglass came over there for the first time a while afterward, and after witness had gone to bed; · that on the next morning Douglass said the paper was only intended to show his client that he was acting in good faith, and was not to go on record. She could not say whether her brother had then signed it.

Mrs. Camp, another sister, stated the same. She too had retired when Douglass came.

Upon this testimony, old and new, a decree was entered for complainant, to enforce the lien as prayed in the bill, and defendant took this appeal.

The court is of opinion that the new testimony does not materially strengthen the old or change the aspect of the case as to this ground of the defense. It was taken thirteen years after the events testified of. The witnesses were closely related to appellant and his grantor. They knew the evidence of these facts as presented in the former record, shared the disappointment at the view taken of it by the Supreme Court, were advised of the objects and needs of the new hearing, and doubtless affected, as to their recollection, by the statements and discussions of the family in the mean time. These circumstances would greatly lessen the weight and force which their testimony would otherwise carry.

But what is more important to consider is that it relates only to the time of signing the agreement in question by appellant, as being an hour or two after he had received his deed and at another place, and to representations by Douglass as to its character and object—circumstances which, as the Supreme Court hold, are not decisive of the real issue, nor very

material to it.   Douglass had nothing to do with the deed from Cyrus M. Hall to appellant.   He could not dictate its form nor interfere with its delivery at any time.   But that deed could not release his lien.   So that if appellant did get it before he signed this agreement and had never agreed to the retention of the lien until he signed the latter, these facts would avail him nothing unless the deed from Douglass to his grantor had also been previously delivered, and without condition or without notice to him of such condition; and the issue is whether it had or had not been so delivered. Upon this issue the new witnesses throw no new light.

It seems that the settlement between Douglass and C. H. Hall must have been agreed on during the afternoon and before the arrival of the justice of the peace.   When he came the papers to be acknowledged had been drawn and he heard nothing of the terms of that settlement.   No witness besides the parties to it pretends to know anything on the subject directly, except Chauncey Hall and Wm. Humphrey, who claim to have been with them during most of the negotiation, and whose testimony was fully before the Supreme Court. That of Hall is not referred to in the opinion, whether because it was overlooked by the writer just at the time of writing, or because it was deemed unimportant or sufficiently disposed of by what was said of the other, we have now no means of knowing; but it could hardly have escaped notice or failed to receive due attention in the consideration of the case.   They were both positive that the S. W. 25 was to be released; but they differed as to some of the circumstances, were uncertain about others, and Humphrey testified to one at least that did not occur.   He stated twice and " distinctly remembered " that when Douglass received the new mortgage he delivered to Cyrus the old one, though nobody will now pretend that there was any old one.   And he mentions a significant fact, not adverted to by the Supreme Court, which is that Cyrus refused, against his remonstrance, to make a deed of general warranty to appellant and qualified the covenant; and further, that instead of taking the deed so made to his client, who had declined to attend because he was

not on friendly terms with his brother, he went and brought him to act for himself in the matter of its acceptance after explanation by the way of the effect of the covenant as qualified. Why was this, if they did not all understand that the lien of Douglass upon the S. W. 25 was not absolutely released? It is altogether probable that several plans of settlement had been discussed, and that Douglass, in speaking of the one he claims was finally agreed on, did say that it would in fact release that quarter if the N. E. 31 was free from incumbrance and of the value they represented it. And this being one object of the parties and the main one of these two witnesses, it may well be that the practical effect, thus declared by Douglass and recognized by all, came to be remembered by them after so long a time as the legal effect, while the reservation of the lien, being upon a condition which they thought so unlikely to happen, made but a slight impression and at length passed out of mind.

C. M. Hall's testimony that appellant's land was released may be accounted for in the same way, so far as it goes, and more easily than that of his father and Mr. Humphrey, for it was in law and fact released as between Douglass and himself. But that he then knew it was retained against the land in the hands of appellant, this qualification of his covenant of warranty and his written recognition of the fact by the guarantee he indorsed on appellant's agreement must be held to prove, as against his statement upon mere recollection seven years afterward.

Appellant knew the terms of settlement only as he was informed. But Humphrey told him of the qualified covenant in the deed made to him, before he received it; he went to his brother's, got his deed from the table by the hand of his attorney and went out without waiting to learn whether the business had been completed between Douglass and his brother and the deed to his brother delivered or not, and he himself says that Douglass told him before he signed the agreement that it was "all settled up *except* he (Douglass) wanted" that agreement. Under these circumstances his denial, so long afterward, can have but little if any weight as against his written agreement made at the time.

Hall v. Edwards.

These contemporary writings signed by the parties in interest, both of which declare against their interest that the agreement in question was a part of the transaction, supported by the positive testimony of Mr. Douglass and by the probabilities of the case, must still be held under the decision of the Supreme Court, to outweigh the present recollection of those same parties to the contrary, and that of two other witnesses related to them and to the transaction as were Chauncey Hall and Mr. Humphrey.

This agreement was not the result of an afterthought on the part of Douglass. Mr. Roberts, the justice of the peace, states that while they were together and before the papers were executed Douglass remarked that he knew nothing about the N. E. 31, and Cyrus M. Hall said he would guarantee it. Duty to his client then plainly required that he should not release the lien upon S. W. 25 except upon the condition set forth in appellant's agreement, and he saw it.

Hall knew the N. E. 31. If it was what he represented the conditional lien on S. W. 25 could do no real harm, and by the conveyance of it to him and its omission from the mortgage back Douglass enabled him to make the deed to his brother according to his bond, subject only to this nominal incumbrance. To so just a precaution, by an attorney ignorant of the new security, in behalf of a client, he could not well object. And that nothing was said about it to appellant when he came in and got his deed may be due to the known ill feeling existing on his part toward his brother and an unwillingness to excite it in that house and presence. It was better to leave the arrangement with him to be made by Mr. Douglass afterward and elsewhere.

The time, then, at which this agreement was signed being immaterial, what remains of the new testimony relates to Mr. Douglass' representations as to its effect, which is pertinent only as tending to show fraud in its procurement and to impeach his credibility. For reasons above suggested in reference to the recollection of Chauncey Hall and Mr. Humphrey about the terms of settlement, we incline to think that these new witnesses have in like manner mistaken what he

said in reference to the practical effect of the paper upon the assumption of the value and condition of N. E. 31, as stated, for its legal effect. This is not only the charitable, but also under the circumstances the probable and natural view of their testimony. It impeaches nobody's veracity or intelligence. It reconciles the denial of Mr. Douglass with their assertions. It makes Mr. Humphrey's advice about signing the agreements intelligible and consistent with his duty as an attorney, and the whole transaction business-like and sensible. The only other views that can be taken of it are that it is willfully false, involving perjury in the witnesses, or literally true. The latter would impeach not only Mr. Douglass, but C. M. and A. P. Hall and Mr. Humphrey in respect both to honesty and intelligence. It makes Douglass false in his testimony, grossly dishonest in design toward his client and the Halls, and stupid in the execution of both, and the latter as weak in being deceived by the one and dishonest in abetting the other. On the whole we are of opinion that the reasoning of the Supreme Court is not affected by the additional evidence produced on this hearing.

The defense secondly set up by the answer fails for the simple reason that admitting the agreement for the sake of the argument, which Adams denies, and his authority to make it, which he also denies and of which no proof was adduced, it was not observed by the defendant.

An answer was put in. It is said that the cause was continued, not because of this answer, but to obtain service on another defendant. That, however, does not change the fact that an answer was filed for Cyrus M. Hall, contrary to the alleged agreement. It is also said that this answer was drawn and filed by Mr. Hannaman as solicitor, in ignorance of the agreement and without the request or knowledge of Hall. But this, if true, is unavailing, because the complainant was not aware of it.

The answer was in fact filed by defendant's recognized solicitors, and without notice to the contrary Adams was authorized to regard it as the act of the defendant and a repudiation of the agreement.

We see no usury in taking the bonus, so called, of $507.97, and the agreement for a larger rate of interest than was originally received.     Manifestly these were not the considerations for forbearance alone.     There was an additional risk assumed by the creditor in substituting for part of the security previously held, another tract of land with the value and condition of which he was unacquainted.     And whether this substitution was so made as to release the former absolutely, or only upon condition, does not affect the principle.     The one would be as valid a consideration in law as the other.     Here was the additional risk of the necessity for another suit to enforce the renewed lien, with the unknown delay, expense and trouble that might attend it.

Perceiving no substantial error in the record, the decree will be affirmed.

Decree affirmed.